### NATIONAL SURETY CO. OF NEW YORK v. JACKSON COUNTY BANK.

Circuit Court of Appeals, Fourth Circuit.
July 5, 1927.

No. 2594.

1. **Frauds, statute of** ⟨⟩33(1)—**Parol agreement to pay debt of another held not within statute, but based on an original independent consideration (C. S. N. C. § 987).**

Where plaintiff bank held assignments covering all money to become due under a building contract, to be applied in repayment of advances made to pay claims for labor and material, a parol agreement by defendant, which was surety on the contractors' bond and liable for all such claims, that, if allowed to use part of the money received by plaintiff on an estimate to pay material claims, it would pay the balance due plaintiff from the contractors, *held* not within the North Carolina statute of frauds (C. S. N. C. § 987), but based on an original and independent consideration received by defendant.

2. **Principal and agent** ⟨⟩171(1)—**Principal, accepting benefit of agent's contract, is bound, and cannot repudiate agent's authority.**

Where principal accepted the benefits of contract made by agent, he is bound by it, and cannot repudiate agent's authority.

3. **Principal and surety** ⟨⟩77—**Surety on contractors' bond not liable for money borrowed by contractor, though used in payment of claims for which it was liable.**

Surety on contractors' bond is not liable on its bond for repayment of money borrowed by the contractor, though used in payment of claims for labor and materials, for which the surety was liable.

In Error to the District Court of the United States for the Western District of North Carolina, at Asheville; Edwin Y. Webb, Judge.

Action at law by the Jackson County Bank against the National Surety Company of New York. Judgment for plaintiff, and defendant brings error. Affirmed.

Mark W. Brown, of Asheville, N. C., for plaintiff in error.

Felix E. Alley, of Waynesville, N. C. (A. Hall Johnston, of Asheville, N. C., and Alley & Alley, of Waynesville, N. C., on the brief), for defendant in error.

Before ROSE and PARKER, Circuit Judges, and BAKER, District Judge.

PARKER, Circuit Judge. This action was instituted by the Jackson County Bank, of Sylva, N. C., hereinafter called the plaintiff, to recover of the National Surety Company, hereinafter called the defendant, the sum of '$10,000. There was a verdict and judgment for plaintiff for the sum of $5,000, and defendant brings this writ of error.

While there is much controversy over many immaterial matters, the relevant facts of the case are few, and the evidence with regard to them is practically undisputed. Hester & McElwee were contractors engaged in the year 1923 in constructing a number of public buildings in North Carolina. They had, among other contracts, one for constructing certain additions to the dormitory building of the Cullowhee Normal and Industrial School at Sylva. Defendant had executed a bond as surety for these contractors, guaranteeing that they would comply with this contract, and would pay all claims for labor and materials incurred in connection with work done thereunder. The contractors, having become insolvent, defaulted on this work January 16, 1924, and the building was completed by defendant.

In the early part of September, 1923, before there was default under the contract, the contractors arranged with plaintiff to advance them money to carry on the work, and to secure these advances they assigned to plaintiff all moneys to be paid them on estimates under the contract. There were two of these assignments, one dated September 6, 1923; the other without date, but executed some time later. The first of these was a general transfer to secure money then due, as well as money to be thereafter advanced to pay for labor and materials. The second, called "Renewal of Assignment," transferred to plaintiff the right to all moneys to be paid under the contract to secure advances theretofore made and thereafter to be made, with the provision that, after paying for labor and materials and reimbursing itself for advance-

ments made, plaintiff should pay over the remainder to defendant, to be applied by it on certain indebtedness of the contractors.

There was also a contract, dated September 5, 1923, prepared by the attorney of defendant, to be signed by plaintiff and defendant, and also by the school and the contractors. This contract provided that the monthly estimates on the work done on the dormitory building should be paid direct to plaintiff, should be kept on special deposit, should be paid out on checks countersigned by one Foster for labor and material furnished for said building, and that no part thereof should be applied by plaintiff to indebtedness due itself, not arising from advancements for labor and materials. It further provided that defendant might cancel the agreement at any time, but upon doing so must reimburse plaintiff for all advancements made by it for labor and materials in the construction of the dormitory. It appears that the contract so prepared was not signed by all of the parties, but was acted upon by them as though it had been signed until the contractors abandoned the contract on January 16, 1924.

On December 19, 1923, the contractors owed plaintiff $20,000. There is evidence justifying the conclusion that all of this, with the possible exception of $5,000, was for moneys used in the construction of the additions to the dormitory. At that time the contractors were entitled to receive payment of another "estimate," or monthly installment under the contract, which would have amounted to about $18,000, and which, under the assignments which it held, plaintiff would have been entitled to receive and apply to the extinguishment of the indebtedness of the contractors, owing for advancements made to them in connection with the additions to the dormitory.

At this stage of the proceedings occurred the transaction which has given rise to this litigation. Certain furnishers of materials were pressing for payment of their bills. The chief engineer of defendant, who was on the scene for the protection of defendant's interests, arranged to have an estimate of $20,000 approved and paid to plaintiff, with the understanding that plaintiff would apply only $10,000 of this on the claim which it held, and would turn over the remaining $10,000 to defendant to apply on these claims of materialmen. The $20,000 was paid to plaintiff pursuant to this arrangement, and $10,000 was turned over by it to defendant, and was applied by defendant in payment of claims for labor and materials.

There is a conflict of testimony as to the exact terms of the arrangement. Plaintiff's cashier testified that, in consideration of its turning over the $10,000 to defendant, to be applied on claims for which defendant was liable under its bond, the chief engineer, who had charge of the matter in its behalf, agreed that defendant would assume the payment of the remaining $10,000 due by the contractors to plaintiff. Defendant's engineer denied making such agreement, but admitted that he had the estimate approved for $20,000 to be paid to plaintiff, and that he received for defendant from plaintiff $10,000 thereof, which he used in paying claims against the contractors. It also appears without contradiction that on December 19, 1923, he wrote a letter to plaintiff regarding this matter, which contained the following statement:

"I have to-day had a conversation with Mr. Underwood, and expect to have an estimate issued which will give you some relief. I expect to obtain an estimate in the neighborhood of $20,000, and desire that you will use $10,000 of this amount in the retirement of two of the $5,000 notes held by you of Hester & McElwee, and the remainder of the money will be used for the payment of two subcontractors for material which has been delivered on the ground. My understanding with Mr. Cowan was that, if this indebtedness was reduced $10,000, the balance may be carried until the succeeding estimate."

On December 21, 1923, he wrote plaintiff as follows:

"Referring to my letter of the 19th inst., I have arranged to-day for the issuance of a certificate for $20,000, which will be sent to Mr. Wilson immediately. It is our understanding that you will use $10,000 of this estimate to take up two of the $5,000 notes of Hester & McElwee, and that the balance will be placed to the credit of the Hester & McElwee trust account, which will be used for the payment on account of certain subcontracts. * * * In making this arrangement I believe I have fulfilled my promise to Mr. Cowan, and that the reduction of the indebtedness to $10,000 will be satisfactory until the next estimate, when a further reduction will be made."

Plaintiff's vice president testified that the cashier of plaintiff and the chief engineer of defendant consulted him about the matter, and that the agreement was to allow defendant to use $10,000 out of the $20,000 estimate in the payment of claims, so that the work could be carried on without going outside of the funds derived from the work, and that

the remaining $10,000 due plaintiff should be paid out of the next estimate, which would be due within a very short while.

No further estimates were paid to plaintiff under the assignments which it held, for the reason that on January 16, 1924, the contractors abandoned the contract, and the defendant, as surety on their bond, completed the work thereunder. In March, 1924, the building inspector agreed to approve an estimate of $20,000 on condition that the money be paid to plaintiff under the assignments held by it, but defendant refused to agree to this, and the payment was not made. When the work was completed, there was a balance of $31,931.60 due under the contract, and this action was instituted, and the school and the contractors were made parties defendant with the surety company. It appears, however, that shortly after the institution of the action the defendant obtained judgment against the school for the balance due, and this judgment we assume has been paid, as no relief appears to have been asked against the school at the trial.

The jury were in effect instructed that the plaintiff would be entitled to recover only that part of the $10,000 sued for which was used in the construction of the additions to the dormitory, unless there was an express contract to pay the $10,000, and their verdict for the sum of $5,000 amounts to a finding that this sum was so used.

The points principally relied upon by defendant are that the court should not have admitted parol testimony as to the promise by defendant's chief engineer that defendant would pay the $10,000 balance due the bank by the contractors, in consideration of plaintiff's agreeing that $10,000 of the December 19th estimate be applied on claims of laborers and materialmen, and that the court erred in refusing to direct a verdict for defendant. We do not think that either of these points can be sustained.

[1] The parol evidence as to the agreement made by defendant's chief engineer was properly admitted. The evidence was not as to a collateral promise to answer for the debt of another, which is required to be in writing by the statute of frauds. Consolidated Statutes of North Carolina, § 987. It related to an independent promise based upon an original and independent consideration. Plaintiff held assignments covering all funds to become due under the contract. Under these assignments it was entitled to apply the estimate of December 19th to the extinguishment of the claims which it held for advancements made

to carry on the work on the additions to the dormitory. Because of the promise of defendant's chief engineer, plaintiff agreed to apply only $10,000 of the amount received from the estimate to its own claims, and released the remainder to be applied on claims for labor and material for which defendant was liable.

This was not only a detriment to plaintiff, but also a distinct benefit to defendant, and constituted an original and independent consideration for the promise on its part to pay the debt of the contractors. In such case the law is well settled that the promise is not within the statute of frauds. Whitehurst v. Hyman, 90 N. C. 489; Peele v. Powell, 156 N. C. 553, 73 S. E. 234; s. c., 161 N. C. 50, 76 S. E. 698; Kelly Handle Co. v. Crawford Plumbing & Mill Supply Co., 171 N. C. 495, 88 S. E. 514; Davis v. Faulkner, 186 N. C. 439, 119 S. E. 819; Rogers v. Gennett Lumber Co., 154 N. C. 108, 69 S. E. 788.

[2] The point is made that the chief engineer was without authority to bind defendant by the promise made in its behalf, and that the testimony should have been rejected for that reason. It would seem that an agent in general charge and supervision of the contract would have authority to bind his principal to an agreement that plaintiff's claim should be subsequently paid out of moneys in which his principal had an interest, in consideration of plaintiff's releasing its claim on an equal amount of money, so as to provide funds for the immediate payment of claims for which the principal was unquestionably liable. Kelly Handle Co. v. Crawford Plumbing Co., supra, 171 N. C. 495, 88 S. E. 514. But, however that may be, defendant has accepted the benefits of the contract made in its behalf by its chief engineer, and is estopped to deny his authority to act in its behalf. Bronson's Executor v. Chappell, 12 Wall. 681, 683, 20 L. Ed. 436.

"It is an established principle of law that, where a person acts for another, who accepts the fruits of his efforts, the latter must be deemed to have adopted the methods employed, as he may not, even though innocent, receive the benefits and at the same time disclaim responsibility for the measures by which they were acquired. With the benefits of the contract he must accept the responsibilities." 21 R. C. L. 932; Chafin v. Main Island Creek Coal Co., 85 W. Va. 459, 102 S. E. 291, 293, 11 A. L. R. 657; Chicago, Mil. & St. Paul Ry. v. U. S., 244 U. S. 351, 358, 37 S. Ct. 625, 61 L. Ed. 1184.

[3] We see no theory upon which a verdict could have been directed for defendant. We agree that the defendant was not liable under its bond for the notes held by the bank, for the bond merely guaranteed the performance of the contract and the payment of claims of laborers and materialmen. It did not guarantee the repayment of borrowed money, even though the contractor may have used the money so borrowed in paying for labor and materials. Murchison Nat. Bank v. Clark, 192 N. C. 403, 135 S. E. 123; Hardaway v. National Surety Co., 211 U. S. 552, 29 S. Ct. 202, 53 L. Ed. 321; Prairie State Bank v. U. S., 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412. But, as we have seen, there was competent parol evidence of an express promise on the part of the defendant to pay the notes of the contractors; and, in addition to this, we think there was evidence that defendant was obligated to pay from future estimates received by it at least that part of the debt evidenced by the notes which represented advancements for labor and material used in the additions to the dormitory. If the contract of September 5, 1923, which was not signed, but was acted upon by the parties, be regarded as the agreement between them, there was express provision that plaintiff be reimbursed for the sums so advanced. If this contract be ignored, on the ground that it was not signed by defendant, we think that the obligation arises upon the other facts established by the evidence.

On December 19, 1923, plaintiff held assignments under which it was authorized to apply funds due the contractors under the contract in repayment of advancements which it had made to them. The estimate then due was payable to plaintiff under these assignments, and the $20,000 was actually paid to it. From this amount it applied only $10,000 on its own claims, and relinquished the remainder to be applied on claims for labor and materials for which defendant was liable under its bond. It relinquished its rights to this remainder, however, on an understanding with defendant's chief engineer that the balance due it should be carried until "the succeeding estimate."

The two letters of the engineer, from which we have quoted, taken with the testimony of plaintiff's vice president, show that, in consideration of plaintiff's forbearance at the time, the balance due it was to be paid from succeeding estimates. It happened that the succeeding estimates were not payable to plaintiff under the assignments which it held, because in the meantime defendant, as surety

for the performance of the contract, had taken over the work thereunder; but certainly plaintiff's rights under its agreement with defendant's engineer were not defeated because of the fact that, when the succeeding estimates became due, they were payable, not to the contractors, nor to plaintiff under the assignments, but to defendant, the very person who had agreed that plaintiff should be paid therefrom. When defendant collected these estimates, it became liable under its express promise that plaintiff should be paid therefrom, as well as for money had and received to plaintiff's use.

We have carefully examined the other assignments of error in the light of the record, and we are satisfied that there was no error committed which affected the result or the "substantial rights of the parties" (U. S. C. title 28, § 391, 40 Stat. 1181 [Comp. St. § 1246]), and that the judgment of the District Court should be affirmed.

Affirmed.

The late Judge ROSE, who sat in the hearing of this case, concurred in the decision that the judgment of the District Court should be affirmed, but died before the opinion was prepared.