# CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY OF IDAHO *v.* UNITED STATES.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 176. Argued April 18, 19, 1917.—Decided June 4, 1917.

The power to establish forest reservations, bestowed upon the President by acts of Congress, includes the power to withdraw lands temporarily from disposition under the public land laws in order that they may be examined, and, if found suitable, may be permanently reserved as forests.

An act of the Secretary of the Interior in directing the making of a temporary withdrawal for forest reserve purposes is in legal contemplation the act of the President.

Lands reserved for forest purposes, whether by temporary withdrawal or permanent reservation, are "specially reserved from sale" within the meaning of § 5 of the general railroad right of way act of March 3, 1875, c. 152, 18 Stat. 482, and also, like the military, park and Indian reservations therein mentioned, are set apart for a public purpose, and are not subject to the provisions of that act.

Under the provision relating to the subject in the Act of March 3, 1899, c. 427, 30 Stat. 1233, a railroad right of way may be obtained over a temporary or permanent forest reservation only if in the judgment of the Secretary of the Interior the public interests will not be injuriously affected thereby, and, in exercising his broad discretion under this provision, the Secretary may condition his approval of an application upon the prior filing of a stipulation, binding upon the applicant, respecting the use and enjoyment of the privilege granted, the prevention of forest fires, and compensation for timber cut or destroyed or for other injuries done to the reservation.

Where, for the purpose of securing a right of way under the Act of 1899, *supra*, with immediate permission to proceed with construction work, a railroad company's agent agreed in writing that it would later execute and abide by a stipulation touching its rights and conduct in the reservation, but the agreement was made subject to ratification by the company, *Held*, that the company's action in availing itself of the permission and proceeding with the construction work with knowledge of the manner in which the permission

had been obtained, and its acceptance of ensuing benefits, amounted to an implied ratification of its agent's agreement, binding the company either to execute the required stipulation or to discontinue the construction and operation of its railroad within the reservation.

A suit by the United States to enjoin a railroad company from constructing and operating its road through a national forest in default of the execution and filing by it of a stipulation required by the Secretary of the Interior, and to obtain damages for timber cut and destroyed and for injury done in the course of the construction and operation of such railroad, is cognizable in equity, and a bill praying such relief is not multifarious.

The damages assessed against the appellant in this case are in part justified by the terms of the stipulation which it agreed to execute, and in other respects are sustained by the concurring decisions of the courts below.

In the absence of either cross-appeal by the Government or objection by the appellant company, the court will not decide whether the decree, instead of commanding unconditionally that the company execute the stipulation agreed upon, should not have provided, in the alternative, for ousting the company from the reservation if it did not execute such stipulation within a certain time.

218 Fed. Rep. 288, affirmed.

THE case is stated in the opinion.

*Mr. F. M. Dudley* and *Mr. H. H. Field* for appellant.

*Mr. Assistant Attorney General Kearful*, with whom *Mr. W. W. Dyar* was on the brief, for the United States.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is a suit by the United States to enjoin a railroad company from constructing or operating its railroad through a national forest reserve in Idaho unless it executes and files with the Secretary of the Interior a stipulation required by that officer, and to obtain damages for timber cut and destroyed and injury done in the course

of the construction and operation of such railroad. In the District Court, 207 Fed. Rep. 164, and in the Circuit Court of Appeals, 218 Fed. Rep. 288, the Government prevailed. The railroad company prosecutes this appeal.

The forest reserve had its inception in an order by the Commissioner of the General Land Office, made March 21, 1905, temporarily withdrawing a large body of public lands from all disposal, save under the mineral land laws. The order was made by direction of the Secretary of the Interior with a view to the creation of a permanent forest reserve, under § 24 of the Act of March 3, 1891, c. 561, 26 Stat. 1095, if after further examination that should receive the President's approval. The permanent reserve was created November 6, 1906, by a proclamation of the President. Between the temporary withdrawal and the President's proclamation the railroad company was incorporated under the laws of Idaho and filed with the Secretary of the Interior a copy of its articles of incorporation and due proofs of its organization. During the same period it also filed in the local land office a map or profile of its proposed railroad through the reserve, and after the President's proclamation it filed in that office a second and then a third map. The line of the proposed road shown upon the second map differed widely from that upon the first and the line shown upon the third differed materially from those upon the others. The first and second maps, neither of which had been approved, were returned to the company as superseded by the third. It was filed May 10, 1907. At that time, as also before any map was filed, the regulations governing applications for railroad rights of way in forest reserves required the applicant to enter into a stipulation respecting the use and enjoyment of the privilege, the prevention of forest fires, the compensation to be made for timber cut or destroyed and the duty of the company to pay for any injury otherwise done to the reserve. 32 L. D. 481; 34

L. D. 583. One provision in the regulations said: "No construction can be allowed on a reservation until an application for right of way has been regularly filed in accordance with the laws of the United States and has been approved by the Department, or has been considered by this office or the Department, and permission for such construction has been specifically given." After filing the third map the company sought permission from the Forest Office to proceed with the construction of its railroad in advance of the approval of its map, and to that end its authorized representative, Mr. George R. Peck, in its behalf, signed and filed in the Forest Office the following memorandum:

"Whereas, the Chicago, Milwaukee & St. Paul Railway Company of Idaho desires immediate permission from the Forest Service to begin construction of the company's railroad in the Coeur d'Alene National Forest, Idaho, I hereby promise and agree on behalf of the company that it will execute and abide by stipulations and conditions to be prescribed by the Forester in respect to said railroad; such stipulation and conditions to be as nearly as practicable like those executed by the company on January 18, 1907, in respect to its railroad within the Helena National Forest, Montana."

The Forester wrote upon the memorandum, and signed, an endorsement, saying: "Approved and advance permission given to construct, subject to ratification hereof by the company." At the same time a telegram was sent to the supervisor of the reserve, saying: "Advance permission given today St. Paul Railroad Company to construct railroad through Coeur d'Alene, subject usual stipulations. Supervise clearing and piling and scale all timber cut."

There was no express ratification of the Peck memorandum, but shortly after it was made the company entered upon the reserve and actively proceeded with the construction of its road, which it would not have been per-

mitted to do without the memorandum. Not until the
work had proceeded for some months was there any in-
dication that the memorandum was not satisfactory to the
company. It then declined to execute the stipulation
called for by the memorandum and assigned as a reason
that Mr. Peck had acted upon the mistaken belief that
the President's proclamation creating the permanent
reserve preceded the filing of the first map, when in fact
the map was filed before the proclamation was issued,
and that the execution of such a stipulation as was called
for by the memorandum was indispensable, when, as
the company asserted, it was entitled, under the Act of
March 3, 1875, *infra,* to a right of way through the reserve
without entering into any stipulation or assenting to any
conditions. But the officers of the Forest Service insisted,
with the full sanction of the Secretary of the Interior and ·
of the Secretary of Agriculture, that the stipulation be
executed and that without it the company was not en-
titled to proceed. This resulted in a conference at which
the company particularly requested that its construction
work be not disturbed and assented to an arrangement
for further negotiations or, if need be, a "friendly law-
suit." Further negotiations failed and the present suit
followed. When it was begun the road through the re-
serve was nearly completed and was in operation, the
construction being on the line shown on the third map.
Approval had not been given to this map but had been
withheld awaiting the company's execution of the pre-
scribed stipulation.

The District Court, after concluding and announcing
that the company was bound by the Peck memorandum
and that the Government was entitled to a decree, gave
the parties an opportunity to agree upon the form of
stipulation called for by that memorandum and then
postponed the assessment of damages as a matter which
might be affected materially by the terms of the stipula-

tion.  Afterward the parties brought into court a form of stipulation, which they agreed was what was required by the Peck memorandum, and that form was adopted by the court, with the addition only of a paragraph declaring that the stipulation should be deemed to have been executed as of May 10, 1907, which was the date of the Peck memorandum, of the permission to proceed with the construction and of the filing of the map according to which the road was constructed.

Rights of way for railroads over lands of the United States were granted only by special acts until March 3, 1875, when Congress enacted a general law upon the subject and confided its administration to the Land Department.  Chap. 152, 18 Stat. 482.  But that law, by its fifth section, was declared to be inapplicable to "any military, park, or Indian reservation, or other lands specially reserved from sale."  Lands in a forest reserve not only are specially reserved from sale, but, like those in the reservations particularly named, are set apart for a public purpose.  Act June 4, 1897, c. 2, 30 Stat. 34–36. That they come within the excepting provision of the fifth section, as do lands in other public reservations, is plain.  Both Congress and the Land Department have so regarded them.  House Report No. 1212, 54th Cong., 1st sess.; House Report No. 1790, 55th Cong., 3rd sess.; *Brainard and Northern Minnesota Ry. Co.*, 29 L. D. 257. Thus the company neither did nor could acquire a right of way over these lands under the law of 1875.  And this is true notwithstanding the preliminary steps taken, as before recited, in advance of the creation of the permanent reserve.  The temporary withdrawal was made several months before any of those steps were taken— indeed, before the company came into existence—and remained in force until the permanent reserve was created. While the withdrawal was in force it was as much of an obstacle to the acquisition of a railroad right of way over

these lands as was the permanent reserve thereafter. The power to establish the reserve included the power to make the temporary withdrawal, and the act of the Secretary of the Interior in directing the latter was in legal contemplation the act of the President. *United States* v. *Morrison*, 240 U. S. 192, 212; *Wilcox* v. *Jackson*, 13 Pet. 498, 512–513; *Wolsey* v. *Chapman*, 101 U. S. 755, 769–770.

We come then to the provision in the Appropriation Act of March 3, 1899, c. 427, 30 Stat. 1233, which says:

"That in the form provided by existing law the Secretary of the Interior may file and approve surveys and plats of any right of way for a wagon road, railroad, or other highway over and across any forest reservation or reservoir site when in his judgment the public interests will not be injuriously affected thereby."

Doubtless if this provision were separately considered, its purpose would seem obscure, but it must be considered in connection with the law of 1875 and the rulings thereunder, and when this is done its purpose seems reasonably plain. That law, by its first section, provides in general terms for rights of way for railroads over public lands. By its fourth section it deals with the identification of the desired right of way by a survey and plat and provides for filing the plat and securing its approval by the Secretary of the Interior. By its fifth section, as has been seen, it excepts forest and other reservations from its operation. Because of this exception the Secretary of the Interior was ruling—properly so, as we think—that his authority did not extend to receiving and approving surveys and plats of rights of way in forest reserves. And so, to obtain such a right of way it was necessary to go to Congress. The requests for special acts came to be frequent, especially as the reserves were increasing in number. In this situation Congress passed the provision last quoted. It is a general and continuing provision, and says, in substance, that rights of way for railroads

through forest reserves may be secured when, and only when, the public interests will not be injuriously affected, and it commits the solution of that question to the Secretary of the Interior. If "in his judgment" the public interests will not be jeopardized, he "may file and approve" surveys and plats of any such right of way. In short, he is invested with a large measure of discretion to be exercised for the conservation of the public interests, and only through his approval can the right of way be acquired without further action by Congress.

Here the Secretary made it manifest, through the regulations before noticed and otherwise, that in his judgment due regard for the public interests required that a stipulation, such as was described in the Peck memorandum, be exacted of the company as a condition to the approval of the survey and map, that is, to securing the right of way. Rightly understanding that this was so, Mr. Peck, the company's representative, promised on its behalf that it would comply with that condition. The promise was given for the purpose of securing permission to proceed at once with the construction of the road, and on the faith of the promise the permission was given. While this was said to be subject to the company's ratification, it must be held upon this record that there was an implied ratification. The company promptly availed itself of the permission and proceeded with the work of construction. The circumstances were such that it must have known how the permission was obtained. It was largely benefited thereby and to these benefits it ever since has held fast. True, after some months had elapsed, it manifested a purpose to disaffirm Mr. Peck's promise, but that was after the implied ratification and after the construction had proceeded so far that restoration of the original situation was not possible.

It follows that the company not only is bound by the Peck memorandum but is in a position where it must

execute the required stipulation or discontinue the construction and operation of its railroad in the reserve.

It is objected that the case is not one which is cognizable in a court of equity and that the bill is multifarious. Both branches of the objection are without merit, so plainly so that a discussion of them would serve no purpose.

The assessment of the damages is called in question, but without any good reason. The stipulation agreed upon as conforming to the Peck memorandum was rightly regarded as decisive of several of the questions bearing upon the assessment and no reason is perceived for disturbing the concurring decisions below upon the others.

The decree unconditionally commands the execution and filing of the prescribed stipulation without awarding an alternative injunction, and counsel for the Government suggest that it should have enjoined the company from the further occupation of the reserve unless within a prescribed time the stipulation be executed and filed. The criticism is not without merit and doubtless is prompted by a careful study of the bill. But as the Government has not appealed and the company is not complaining of the failure to put the matter in the alternative, the point may be passed without further notice.

*Decree affirmed.*


Mr. Justice McReynolds took no part in the consideration or decision of this case.