# VAN DYKE ET AL. *v.* ARIZONA EASTERN RAIL-ROAD COMPANY.

## ERROR TO THE SUPREME COURT OF THE STATE OF ARIZONA.

No. 59.    Argued November 19, 1918.—Decided December 9, 1918.

A railroad company, having surveyed a line over public land and filed map and application for right of way under the Act of March 3, 1875, (which affects public land only,) and the land having in the interim become part of a National Forest, made application, upon the same map, to the Commissioner of the General Land Office for permission to construct in the Forest; received such permission from the Forest Service, to which the matter was referred; amended its location somewhat, so as to lay the right of way, staked 200 feet wide, across a mining claim in the Forest; obtained conveyance of 100 feet in width from the mining claimants, and constructed and operated its road. Thereafter, the original application was approved by the Secretary of the Interior, and thereafter the tract crossed was thrown open to entry.

*Held,* (construing the Act of 1875, *supra,* and the Act of March 3, 1899, relating to rights of way in forest reservations,) (1) That the right of the railroad, to the full 200 feet, was superior to the right of one who held under the mining claim until the land was thrown open and who then settled, and ultimately obtained patent, under the Homestead Law, although his homestead right was initiated before the company amended its map to show the change of location and before the Secretary approved the application as thus amended.    P. 53.

(2) That the question whether failure to describe the route in its charter left the company without power to construct upon it, and unqualified to receive the grant, was not subject to be raised by the homesteader.    P. 54.

18 Arizona, 220, affirmed.

THE case is stated in the opinion.

*Mr. William C. Prentiss,* with whom *Mr. Richard E. Sloan* and *Mr. F. C. Jacobs* were on the brief, for plaintiffs in error.

*Mr. Charles L. Rawlins* for defendant in error.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Error to review a judgment of affirmance of a judgment rendered in the Superior Court of Gila County, Arizona, quieting the title of the Railroad Company to 2.23 acres of land in the N. W. ¼ of the S. E. ¼, Sec. 30, T. 1 N., R. 15 E., Gila County, Arizona.

The trial court made findings of fact which were concurred in by the Supreme Court. And we see no reason for not accepting them, notwithstanding plaintiffs in error urge a review of them. They are as follows:

The railroad, as the successor of the Gila Valley Globe & Northern Railway Company, acquired its rights, including rights of way and all other assets. In March, 1906, the latter company platted a line of railroad from Globe to Miami, Arizona, about nine miles in length, passing over and across certain public land, and, November 5, 1908, filed in the local land office its map or profile of definite location as provided by the Act of Congress of March 3, 1875. Prior to that time the land covered by the map as well as the land in dispute was thrown into the Crook National Forest Reserve. April 19, 1909, written application to the United States Department of Agriculture, Forest Service, with map of right of way attached, was made by the railroad to enter and extend its line across a portion of the Forest Reserve. The railroad was given permission, on July 6, 1909, to enter the reservation and to locate and construct its road therein. The map and profile of its road was approved September 21, 1909, by the Secretary of the Interior in accordance with the act of Congress.

In April, 1909, the Globe Company commenced the construction of its road and completed it in September of that year, and it and the appellee company have operated trains ever since October, 1909. Before construction was commenced, to-wit, in November and December, 1908,

the Globe Company amended its line of survey and changed the course of its road upon and across the land in dispute and along its entire length to the extent of 100 feet in width on each side of the center line of its railroad and constructed its road on the amended location conforming on the ground to the staked and marked line.

At the time of the amended location the land was held by the Miami Land & Improvement Company, a corporation, as mineral land, and the Globe Company accepted a deed from it to a right of way across the land. By executive order the land in dispute was restored to the public domain December 22, 1909, on which date appellant, Cleve Van Dyke, filed upon the same under the homestead law.  He had theretofore accepted it under an option to purchase as a mineral location from the Miami Improvement Company.  On that date he went off the land, but immediately returned and established his residence with a view to homesteading.  In due course he made final proof and on February 12, 1912, a patent without any reservation was issued to him for his homestead.

December 30, 1909, the Globe Company filed its amended map and profile of its right of way in the local land office which was regularly and duly approved March 4, 1911.

Van Dyke attempted to show that he had established residence upon the land prior to December 22, 1909, the date upon which he filed his homestead entry.  But it is clear that he did not go upon the land prior to its inclusion in the Forest Reserve.  He was upon the land under the option to purchase mentioned, and he attempted to show that he was there under a verbal permit from the Forest Supervisor with the intention of entering the land as a homestead and that he made application to the Forestry Department for an examination and listing thereof under the Act of June 11, 1906 [c. 3074, 34 Stat. 233]; application, however, was rejected.

That he did not rely upon the settlement prior to December 22, 1909, is clearly shown by his testimony. He said: "It is a fact that about midnight on the 22nd of December, 1909, I took up my residence in the house testified to. That is, I went off the ground and back on again at midnight." December 22nd was the first time the land could have been settled upon without permission from the National Government, and this permission he did not obtain.

Upon these facts the Supreme Court said certain contentions arose: (1) It is that of the railroad that its rights were fixed and established in August and September, 1909, when it completed the construction of its railroad. (2) Opposing, plaintiffs in error assert that, because the railroad changed its route as located by its original map and profile approved by the Secretary of the Interior, it acquired no rights until it filed with the local land office on December 30, 1909, its amended map of location, which was too late, Van Dyke having taken the land as a homestead December 22, 1909. And to the contention of the company that if the land was public it was not bound to follow the line as shown on its map and profile, plaintiffs in error reply that the land had ceased to be public land by being thrown into the National Forest Reserve and that the railroad was hence restricted to the specific right of way shown on its approved map and profile; or, if changed to another and different route, the consent of the Interior Department was necessary and that such permission had not been given and hence the railroad acquired no rights, at least against plaintiffs in error. It is conceded, however, that the railroad company was entitled to a right of way to the extent of 50 feet on each side of the center of its line of track acquired by deed from the Miami Land & Improvement Company, in the execution of which deed Van Dyke "acquiesced." Therefore, as said by the Supreme Court, "Fifty feet on each side of

the center line of the track, or 100 feet of the right of way, are not involved in this suit; the area in question being the excess of 100 feet up to 200 feet, amounting to 2.23 acres."

We have had occasion to consider the Act of 1875, 18 Stat. 482, and what constituted a definite location of the right of way under it, and have decided that such event occurs by the actual construction of the road. *Jamestown & Northern R. R. Co.* v. *Jones*, 177 U. S. 125; *Minneapolis &c. Ry. Co.* v. *Doughty*, 208 U. S. 251; *Stalker* v. *Oregon Short Line R. R. Co.*, 225 U. S. 142.

It was found by the courts below that the construction of the railroad was commenced in April, 1909, and completed September, 1909, and that trains have been operated on it ever since. This satisfies the condition expressed in the cited cases of the appropriation of a right of way. But it is objected that the land was not then subject to appropriation, being within a Forest Reserve. In reply the Act of Congress of March 3, 1899, c. 427, 30 Stat. 1233, is adduced. It reads as follows: "That in the form provided by existing law the Secretary of the Interior may file and approve surveys and plats of any right of way for a wagon road, railroad, or other highway over and across any forest reservation or reservoir site when in his judgment the public interests will not be injuriously affected thereby."

Of this act we said, in *Chicago, Milwaukee & St. Paul Ry. Co.* v. *United States*, 244 U. S. 351, 357, 358, that it commits to the Secretary of the Interior the question of determining whether the public will be injuriously affected by the grant of a right of way to a railroad through a forest reserve and authorizes him to file and approve surveys and plats of the right of way. The measure of his discretion is large and only through his approval can a right of way be acquired.

The condition was satisfied in this case. The Globe Company—to the rights of which defendant in error

succeeded—in 1906, in preparation for the construction of its road, platted its road and filed in the local land office its map and profile of definite location under the Act of 1875, in November, 1908. Several months prior to the latter date the land of the platted line and the land in dispute were thrown into the Crook National Forest Reserve. In the following year the railroad company made application to the Commissioner of the General Land Office for permission to enter the reserve and to locate and construct its road thereon. And the application was communicated to the Department of Agriculture and approved by the Acting District Forester; the permission was granted and the map and profile of the road was approved September 21, 1909, by the Secretary of the Interior, pursuant to the Act of Congress of March 3, 1875. The road was constructed, and, as we have said, completed in September, 1909, and put in operation in October. And these successive steps were before the date on which Van Dyke attempted to initiate a homestead right. The discretion of the Secretary of the Interior was therefore exercised, and we agree with the Supreme Court that we cannot infer a rule of the Department which precluded the granting of permission upon the original map and profile.

Plaintiffs in error contend that the railroad company had no power to construct a road from Globe to Miami, Arizona, because its charter failed to designate such a line as within the project for which it was incorporated. This was made an issue by the pleadings and the court found against it. Besides, it is not within the province of plaintiffs in error to make the objection; it was a matter for the Secretary of the Interior to determine. And, again, plaintiffs in error have not such relation to the railroad company as to complain of the exercise of power outside of its charter.

*Judgment affirmed*