**PERRY et al. v. PAGE, Collector of Internal Revenue.**

No. 2471.

District Court, D. Rhode Island.

April 21, 1933.

Chauncey E. Wheeler and James F. Armstrong of Hinckley, Allen, Tillinghast, Phillips & Wheeler, both of Providence, R. I., for plaintiffs.

Henry M. Boss, Jr., U. S. Atty., of Providence, R. I. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., of counsel), for defendant.

LETTS, District Judge.

This is an action at law, with jury trial waived, brought by the surviving trustees under the will of one Frank B. Hazard, deceased, to recover the sum of $11,123.04, representing taxes paid by the estate for the year 1927.

It is alleged that this tax was erroneously assessed and collected upon income of the estate which, under the terms of the will of the decedent, was to be used exclusively for charitable purposes and should have been deducted from gross income as not taxable under the provisions of sections 214 and 219 of the Revenue Act of 1926 (26 USCA § 955, and § 960 note).

To this claim the defendant has set up as a bar to the action a closing agreement executed in April, 1929, by the plaintiff trustees and by the Commissioner of Internal Revenue. This agreement, which is set out on a form customarily used for that purpose, carries upon its face the following:

"The above agreement has been approved (by the Secretary of the Treasury)[1] in accordance with the provisions of Section 606 of the Revenue Act of 1928 the approval being specifically enumerated on—

"Schedule No. 1980

"Dated Apr. 23, 1929."

This certificate appears to have been indorsed: "Mr. Bond, Act'g Sec't'y."

Turning to Schedule No. 1980 introduced as an exhibit, we find another form instrument customarily used in the office of the Commissioner of Internal Revenue, bearing date of April 23, 1929, addressed to the Secretary of the Treasury and purporting to submit for his consideration, and requesting his approval of, the action of the Commissioner of Internal Revenue in entering into the settlement agreement here involved. At the

---

[1] This insert appears in the original agreement.

foot of this instrument appears the following notation:

"Treasury Department,
   "Office of The Secretary,
      "Apr. 27, 1929,
"Approved:
   "Henry Herrick Bond,
      "Acting Secretary of the Treasury."

The plaintiffs have set up in reply, and by way of avoidance of the legal effect of this settlement agreement, the following contentions:

First. That the entire amount of the tax collected being imposed upon income which had been set apart for charitable purposes under the terms of decedent's will, there was no color of lawful right or claim on the part of the government to assess or collect the tax and that, therefore, there was no consideration for the settlement agreement entered into.

Second. The plaintiffs contend that section 606 of the Revenue Act of 1928 (26 USCA § 2606 and note) requires that any settlement agreement must be approved by the Secretary or Undersecretary of the Treasury, in person, before the agreement becomes binding and that the exhibit, Schedule 1980, bearing the aforementioned indorsement by Henry Herrick Bond, Acting Secretary, does not establish the necessary approval of the agreement by the secretary or undersecretary.

The plaintiffs' third and fourth replications to the defendant's plea allege that the settlement agreement was entered into through the malfeasance of the Commissioner of Internal Revenue and by reason of misrepresentation of a material fact by him, or his agents and servants, and was, therefore, not binding upon the plaintiffs. At the trial of the case no serious effort was made to sustain either of these allegations, and it is affirmatively found that there was no malfeasance or misrepresentations either by the commissioner or his agents and servants, within the meaning and intendment of section 606 of the Revenue Act of 1928.

The only two real issues involved are, therefore, in regard to the need and adequacy of consideration for the agreement, and, secondly, whether the record, as above summarized, discloses an approval by the Secretary of the Treasury within the meaning of said section 606.

At the very outset of the consideration of a suit of this character, one is concerned with the query of whether or not the tax in question was, in whole or in part, improperly assessed and collected. The conclusion arrived at in that connection does not, however, necessarily control the result to be reached after giving legal effect and consideration to the subsequent voluntary, although perhaps mistaken, acts of the parties. I am satisfied from a study of the provisions of the decedent's will and the testimony and other exhibits presented that, were it not for the intervention of the settlement agreement, the plaintiffs here would be entitled to a recovery of the full amount of the tax in question. Slocum et al. v. Bowers (D. C.) 15 F.(2d) 400; Bowers v. Slocum (C. C. A.) 20 F.(2d) 350; Treasury Decision 4122, C. B. VII-1, p. 247.

If this conclusion be correct, it is clear that the government on its part in entering into the settlement agreement neither gave up nor surrendered anything. There is nothing in the record to suggest either a desire or intention to pursue further investigation or make any additional assessments upon the income of the estate for the year 1927. There was no surrender of any right or claim on the part of the United States by agreeing to retain the full amount of $11,123.04. The only apparent colorable controversy which existed between the parties was the claim of the plaintiffs that a refund of the full amount should be made and the contention by the government that no additional refund should be made, there having been refunded in March, 1929, a small amount of the original collection.

Counsel for the defendant dwell in their brief and argument upon the fact that in 1927 a portion of the estate income, upon which the tax was imposed, had not, during 1927, been specifically allocated or designated under the will to a specific beneficiary. This fact is emphasized to support the contention that as of the time the settlement agreement was signed the government did have a colorable claim to a part, at least, of the tax assessed. The quieting of this difference is presented as a legal consideration for the agreement. It is difficult to discern, however, even if there were a colorable basis for the government's contention, how the settlement of an argument over a portion could constitute a consideration running to the plaintiffs for acquiescence in the retention by the government of the whole. The government, by entering into the settlement agreement, made no compromise, no surrender, of any disclosed colorable legal right. There was given no consideration for the commitment of the taxpayer in the sense "consideration" is employed in the law of contracts.

■ What then is the effect of this lack of consideration upon the validity of the settlement agreement? In my opinion, there is none. There is a stated period within which the taxpayer or the government may sue, or be sued, in respect to income taxes. In one situation, the taxpayer may, by voluntary consent, cause this period to be extended. This act on the taxpayer's part is, for convenience, called a "waiver." In another situation, if both parties voluntarily consent to a final statement of the tax account and if this consent be evidenced by a written instrument and approved by the Secretary or Undersecretary of the Treasury in manner specified in said section, the effect of such voluntary and concurring acts is to shorten the period. The legal significance of such action on the part of the taxpayer and the designated officials of the government is neither dependent upon, nor altered by, either the accuracy or fairness of the resulting tax burden. This procedure, requiring as it does the concurring action of both parties, results in what is called a "settlement agreement." The effect of such an agreement is stated by the statute. The acts take on legal significance and radiate consequences, not because of the principles of contract law, but because of statutory specification within a legislative field which permits a sovereign to control and designate how, when, and where it may be sued.

In the case of Ætna Life Ins. Co. v. Eaton (C. C. A.) 43 F.(2d) 711, 714, Hand, J., in referring to the character and effect of a closing agreement, said:

"We are clear that by the closing agreement the parties in fact intended to settle all questions relating to the validity of the assessments for 1923 and 1924, and that, irrespective of this, the Revenue Act made the agreement a *statutory bar.*"

In the case of Bankers' Reserve Life Co. v. United States, 42 F.(2d) 313, 316, the Court of Claims in an opinion written by Littleton, J., sustaining a demurrer to the declaration, held that that court was without jurisdiction to entertain a suit to recover income tax after a settlement agreement had been entered into. The court said:

"Congress thus expressly *authorized the parties by agreement to shorten the period of limitation* for the determination, assessment, and collection of a tax and for the filing of claims for refund, abatement, credit, and the institution of suit for the recovery of the amount paid."

Some of the authorities examined seem to toy with the notion that in dealing with these settlement agreements a guide may be found by turning to the law of contracts. I am convinced, however, that that is not the case. We are dealing with acts, the legal significance of which may be arbitrarily stated by Congress so long as there is no constitutional conflict. These consequences, as stated, are:

"(1) The case shall not be reopened as to the matters agreed upon * * *

"(2) In any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded."

I find that there was no consideration running from the government to the taxpayer incident to the stipulation here presented as a settlement agreement, but that such absence of consideration does not alter its conclusive and binding effect.

■ The question yet remains as to whether the settlement agreement was executed in all respects in compliance with the statute so as to constitute an insuperable bar to recovery in this action. No issue is raised in regard to the sufficiency of the form of the instrument. There is no contention that it was not properly and timely signed by the plaintiffs in this case. The testimony of former Commissioner Blair in identifying his signature clearly establishes a prima facie case that the settlement agreement was timely and properly executed by him.

Paragraph (b) of section 606 of the Revenue Act of 1928 (26 USCA § 2606 (b), provides, in addition to the execution of the agreement by the taxpayer and the commissioner or his subordinate, as follows:

"If such agreement is *approved* by the Secretary or the Undersecretary, within such time as may be stated in such agreement," etc.

The agreement carries upon its face a certificate, certifying that it has been approved by the Secretary of the Treasury, dated April 23, 1929, and carries the notation of "Mr. Bond, Act'g Sec't'y, April 27, 1929." The last clause of this certifiate is as follows: "The approval being specifically enumerated on Schedule 1980." Turning to this schedule, we find a communication addressed to the Secretary of the Treasury, bearing date April 23, 1929, requesting his approval of the settlement agreement. This schedule or communication purports to be signed by Mr. Blair, then commissioner. Upon this schedule appears a notation dated April 27, 1929: "Approved: Henry Herrick Bond, Acting Secretary of the Treasury."

The plaintiffs contend that, under the statute, the approval must be given by the person who is in fact Secretary of the Treasury, or the person who is in fact Undersecretary of the Treasury; that these documents signed by Mr. Bond, as acting secretary, are insufficient, and that, therefore, the agreement never became binding upon the plaintiffs or a bar to this action.

Counsel for the plaintiffs, in tracing the legislative history of the section of the statute involved, disclose support for their contention, at least to the extent that it was the intention of Congress that these agreements should not be passed upon by minor subordinates, but should have the approval of one of the two major officials of the department. It will be noted, however, that the statute does not require the signature or approval in writing by these officials. It conditions the binding effect of the agreement only upon their approval. I am of the opinion that the interpretation of the intendment of this requirement should not be so technical or strictly construed as to be at times unworkable and impractical. After all, government must go on and it can scarcely be assumed that Congress intended, in event of absence or disability of the secretary and undersecretary, with an acting and designated head of the department in charge, that the machinery of government in any respect should be brought to a standstill. No question is raised that Mr. Bond was at the time acting Secretary of the Treasury; no doubt is raised in respect to the fact that the agreement here involved was approved by Mr. Bond and as acting Secretary of the Treasury. It may reasonably be assumed, in the absence of any evidence to the contrary, that the Secretary of the Treasury approved the official acts of him who was the acting head of his department. Not that he approved in the sense that the matter was specifically brought to his attention and that he, by word or deed, gave express and specific approval thereto, for there is no evidence that such was the case, but the secretary may be deemed to have generally approved all official acts of the acting secretary. Assuming, however, that there was in this case no personal approval, general or specific, by either the Secretary of the Treasury, in person, or the undersecretary, in person, I am satisfied that the requirements of the statute were met by the approval of the agreement by him who was the acting head of the department.

The necessity of thus giving a practical interpretation to the specific requirements of a congressional act, in regard to how and by whom an official duty must be discharged, is reviewed in the early case of Williams v. United States, 1 How. 290, 11 L. Ed. 135. See, also, Roxford Knitting Co. v. Moore & Tierney, Inc. (C. C. A.) 265 F. 177, 11 A. L. R. 1415; United States v. Blendauer (D. C.) 122 F. 703, 707; Chicago, Milwaukee & St. Paul Ry. Co. of Idaho v. United States, 244 U. S. 351, 37 S. Ct. 625, 61 L. Ed. 1184.

The authorities cited by counsel for the plaintiffs, such as that of the Botany Worsted Mills v. United States, 278 U. S. 282, 49 S. Ct. 129, 132, 73 L. Ed. 379, in support of the contention that, "when a statute limits a thing to be done in a particular mode, it includes the negative of any other mode," deal with a totally different problem and the general language employed must be considered in the light of the specific issue involved. I have been able to find no authority, and none have been cited, which would justify the contention that the acting head of an executive department may not discharge the duties of government delegated to or imposed by law upon the titular head of that department.

I find, therefore, that the settlement agreement pleaded in bar to this action was properly executed and properly approved, and constitutes a bar to any recovery in this suit.

Judgment may be entered for defendant.