**FLORIDA FRUIT CANNERS, Inc., et al. v. WALKER.**

No. 8414.

Circuit Court of Appeals, Fifth Circuit.

June 19, 1937.

Rehearing Denied July 19, 1937.

---

O. K. Reaves, of Tampa, Fla., and H. M. Hampton, of Ocala, Fla., for appellants.

C. P. Dickinson and Claude L. Gray, both of Orlando, Fla., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This is an appeal from a final decree in an equity proceeding, in which appellee, as plaintiff, secured the cancellation of a deed to an orange grove executed to the appellant Florida Fruit Canners, Inc., and, under an accounting with L. Maxcy, Inc., obtained allowances totaling $50,894.85, to be set off against a secured claim, admittedly due L. Maxcy, Inc., in the amount of $52,910, thereby reducing the claim to $2,015.15.

The Lake Nursery Company is a Florida corporation, and on the 8th day of July, 1930, had 3,000 shares of stock outstanding; 2,990 of which belonged to W. S. McClelland, its president. At that time, a foreclosure suit was pending in a state court of Florida under a mortgage given on the orange grove and nursery which constituted the principal asset of the corporation. Both the corporation and McClelland were without funds with which to satisfy the debt secured by the mortgage. A receiver was appointed in the foreclosure proceeding, and on the above-mentioned date, two contracts were executed by L. Maxcy, Inc., one with the receiver and the other with the Lake Nursery Company. In its contract with the receiver, L. Maxcy, Inc.,

covenanted and agreed, among other things, to take immediate charge of the properties of the Lake Nursery Company, and to continue in possession and management thereof until June 1, 1931, having authority under the contract to make necessary expenditures in the operation, to be charged against the proceeds, not to exceed $11,000; to operate and manage the property in the usual and customary manner, and to report expenditures as the receiver might request; to pick, haul, pack, ship, and sell the fruit produced on the property on such markets as it might be advised were best and proper; and, after deducting the expenses therefor and paying other optional and fixed charges, to report the net proceeds to the receiver; to proceed to apply said proceeds to the advances made by it until such advances may have been retired; and to pay over to the receiver any balance remaining on hand after all of the advances had been paid in full, any deficiency to be charged against the receivership as an expense thereof; provided, however, that $1,000 from the first funds received be paid to the receiver for payment of fees, costs, and expenses.

The contract further provided that the items referred to as advances and expenses, when made by L. Maxcy, Inc., should be considered advances to the receiver and should be included in the lien thereinafter given by the receiver. No other mention of the lien is made in the contract, but it seems to be fully covered by the contract between L. Maxcy, Inc., and the Lake Nursery Company.

The last-mentioned contract recites the facts and circumstances of the receivership and the execution of the contract between L. Maxcy, Inc., and the receiver, and that Lake Nursery Company applied to L. Maxcy, Inc., for aid and assistance in working out its difficulties, the management of its properties, the marketing of its produce, and the protection of its creditors. It then provides that the Lake Nursery Company ratifies and approves the contract between the receiver and L. Maxcy, Inc.; that the agreement therein contained be extended as to the Lake Nursery Company for a period of four years after the termination thereof; that unpaid advances bear interest; that L. Maxcy, Inc., be given a lien on the property and crops to secure the advances; that the groves would be operated and managed in the most economical manner, the best care possible being taken of the same to make them produce the best fruit they were capa-

ble of producing, and to market the fruit to the best advantage; and that all that could be done to make the groves a paying investment would be done; and that, if on the expiration of the contract all the advances 'made had been fully repaid, the property would be returned to the Lake Nursery Company, but if any part remained unpaid, the contract would be extended for another year, and, if any balance still remained unpaid, L. Maxcy, Inc., should have the right to demand payment within thirty days, and, in default of payment, foreclosure, under the contract should follow, the expense of foreclosure to become a part of the debt secured.

The contract further provided that L. Maxcy, Inc., pay taxes, insurance, attorneys' fees and legal expenses, upkeep of implements, machinery, and replacements, and for the purchase of necessary additions thereto, including livestock; all to become the property of Lake Nursery Company, subject to the lien therein provided; that if L. Maxcy, Inc., should pay outstanding claims against the property and against the Lake Nursery Company, such payments should be included in the advances secured by the lien; and that L. Maxcy, Inc., should be subrogated to the rights of the persons whose claims had been paid. The contract also provided that, in the payment of claims for operation and of creditors, the proceeds of the operations should be applied, first, to the advances made by L. Maxcy, Inc.; second, to money advanced to other creditors; third, to the creation of a balance for working capital not to exceed $10,000; and, fourth, any balance remaining after satisfying the three foregoing provisions to be paid over to a named bank and trust company as trustee to be distributed to creditors when the amount so deposited should equal $1,000 or more.

The operation under the contract with the receiver did not bring about any change in the situation favorable to the Lake Nursery Company, and, on August 27, 1931, the receivership was terminated, L. Maxcy, Inc., advancing the money to pay the holder of the mortgage and securing an acknowledgment of the correctness of the balance of $22,621.80, claimed to be due it. During the operation which followed, numerous other advances were made, judgments satisfied, and liens cancelled, and, as a result of these advances and the losses due to operation, the indebtedness to L. Maxcy, Inc., increased to $52,910.

. During the period of operation, Sellar and Collins purchased the stock of W. L. McClelland at an execution sale. Thereafter, at the instance of L. Maxcy, Inc., a stockholder's meeting was held, at which the purchasers elected themselves officers and agreed to sell the assets of the corporation to L. Maxcy, Inc., for the amount they had expended and a small profit to themselves. Thereafter, a deed was executed in the name of the Lake Nursery Company, conveying the property to the Florida Fruit Canners, Inc., for the use of L. Maxcy, Inc., and approximately $300 was paid to Sellar and Collins on the delivery thereof. Sellar and Collins did not undertake to set up any accounts for the corporation or to account to the corporation for the proceeds of the sale. In dealing with them, L. Maxcy, Inc., did not treat them as representatives of the corporation, but bargained with them on the basis of the money they had spent and a profit to them individually.

On the 28th of January 1936, the Lake Nursery Company was adjudicated a bankrupt, and thereafter filed schedules showing unsecured creditors holding claims aggregating approximately $38,000 Appellee herein was appointed and qualified as trustee. Thereafter, appellee filed his bill in the District Court, alleging the sale by Sellar and Collins, mentioned above, and that the same was void for want of consideration and as a fraud upon creditors, voidable under section 70e of the Bankruptcy Act (11 U.S.C.A. 110(e), and prayed that the same be set aside. The bill also alleged the two contracts, outlined above; that L. Maxcy, Inc., had not rendered an accounting under the contract with the Lake Nursery Company; had breached the contract in not properly cultivating the groves, marketing the crops, caring for the trees; set up certain charges that it alleged should be made against L. Maxcy, Inc.; and prayed for an accounting.

Each defendant filed a separate motion to dismiss, alleging that the bill did not allege grounds for relief under section 70e of the Bankruptcy Act, 11 U.S.C.A. § 110 (e), but that, if any grounds for relief were shown, they were under section 23, and that, under paragraph (b) of said section 23 (11 U.S.C.A. § 46(b), jurisdiction did not lie in the District Court, no diversity of citizenship being shown. These motions were overruled and separate answers were filed denying fraud in the conveyance to the Florida Fruit Canners, Inc., and failure

to account. The matter was referred to a master, who, after taking voluminous testimony, reported that the deed was fraudulently executed, was a fraud on creditors, and should be set aside; that, on the accounting, L. Maxcy, Inc., was entitled to a credit of $52,910.00, against which appellee was entitled to charge $25,000 as "deliberate damage to the grove," $18,000 for nursery stock unaccounted for, $5,407.-60 for inventoried nursery stock unaccounted for, $2,030 as the inadequacy of the price of nursery stock sold to a subsidiary corporation by L. Maxcy, Inc., and $447.25 as improper charges, making a total of $50,-894.85, or a balance due L. Maxcy, Inc., of $2,015.19. Objections to the master's report were overruled, and a final decree was entered in accordance therewith.

Appellants contend that, since the bill alleges that the deed from Lake Nursery Company to the Florida Fruit Canners, Inc., was executed by persons not authorized to act for the grantor, and acting solely in their own interest and without consideration passing to the Lake Nursery Company, the bill does not state any ground for relief under section 70e of the Bankruptcy Act (11 U.S.C.A. § 110(e), since the right to avoid the deed would inure primarily to the bankrupt and not to the creditors; that such right as the trustee had in the matter came to him by virtue of his succession to the rights of the bankrupt; and that suit could only be brought under the terms of section 23 of the Bankruptcy Act (11 U.S. C.A. § 46), and, there being no ground for federal jurisdiction in a suit by the bankrupt to set aside the conveyance, the District Court did not have jurisdiction.

The allegations of the bill are sufficient, if appellee has the right to avoid the transfer as successor to the rights of the creditors. The effect of the conveyance, if valid, was to vest the Florida Fruit Canners, Inc., with the rights in and to the property theretofore vested in the Lake Nursery Company, for the use and benefit of L. Maxcy, Inc. These rights may be called the equity of redemption under the lien given to L. Maxcy, Inc., under the contracts. The evidence showed, and the court found, that the property, at all times, had a value of not less than $75,000. Thus, the equity had a value of not less than $23,000. The existence of claims against the corporation which, in their aggregate, exceeded this amount, made the stock worthless in the hands of Sellar and Collins. However, as legal owners of the stock, they were vested with the power and authority to execute a valid conveyance, provided the legal formalities prerequisite thereto were satisfied.

■ The contention of appellants seems to reduce itself to the proposition that, since the bill alleges facts which, if true, would make Sellar and Collins volunteers in the conveyance, or wrongdoers, with no authority to bind the corporation, either by deed or contract, in law or equity, the right to avoid their acts would reside only in the corporation and never in the creditors. The right of creditors to avoid a conveyance where no consideration passed to the grantor is amply secured under the Florida statutes, if the conveyance be conceived in fraud, covin, collusion, or guile for the purpose of hindering, delaying, or defrauding creditors. Section 5771, Florida Compiled General Laws of 1927.

■ The agreement of Sellar and Collins, and the deed executed pursuant thereto, were void for want of consideration passing to the Lake Nursery Company, without regard to their purpose to defraud the corporation and its creditors, such being the natural and necessary result of the conveyance. Williams v. Travis (C.C.A.5) 277 F. 134. The existence of such purpose or intent and the consummation thereof might give rise to additional rights and remedies, but they would not impair the right of the creditors to attack the conveyance. Any failure to comply with the law in qualifying as officers and directors of the corporation would not improve the legal status of the conveyance, or prejudice the rights of creditors. The wrongful act of misappropriation does not eradicate the fraud incident to the transaction. The creditors had the right to set aside the conveyance as fraudulent; this right passed to appellee; and the court had jurisdiction under section 70e.

■ Having taken jurisdiction under section 70e to set aside the conveyance, the court had jurisdiction to proceed with the accounting for the proceeds of the operations and advances under the contract between the bankrupt and L. Maxcy, Inc., and to hear and determine the claims of appellee for waste alleged to have been committed during that period. Twist v. Prairie Oil & Gas Co., 274 U.S. 684, 47 S.Ct. 755, 71 L.Ed. 1297; Chicago, M. & St. P. R. Co. of Idaho v. U. S., 244 U.S. 351, 37 S.Ct. 625, 61 L.Ed. 1184, affirming (C.C.A.) 218 F. 288.

The master states in his report that the defendant L. Maxcy, Inc., cannot be held responsible for any honest mistake in judgment in connection with the management of the grove, and this ruling is not challenged. Appellants insist that the findings of the master, that L. Maxcy, Inc., was guilty of "deliberate damage to the grove," improper handling of nursery stock, and making fictitious charges against the property, are contrary to the weight of the evidence, both as to liability and amount. As to the management of the grove, it appears that it produced 4,910 boxes of fruit the first year, 6,705 the second year, 10,081 the third year, and 10,745 the fourth. Various natural causes are given as reasons for poor production, including freezes, tropical storms, and unseasonal precipitation.

Appellee contends that permanent damage was done to the grove by improper cultivation, failure to provide suitable cover vegetation, and the use of excessive mineral fertilizer and lack of replenishment of organic matter in the soil. Various experts testified, the largest number being introduced by appellee. Their testimony varied as to what constituted a proper balance in fertilizers and as to how coverage and cultivation could be made most effective. Appellee's witnesses were unanimous in condemning the methods and materials used by L. Maxcy, Inc., but admitted, with a few unimportant exceptions, that field conditions would vary the requirements and that the witnesses themselves had no knowledge of these conditions. Witnesses for appellants principally were engaged in the employment of L. Maxcy, Inc., were familiar with the grove in question, and testified that the methods followed were proper or best. The master discounted the value of this testimony, because of the apparent interest of the witnesses.

The report does not disclose which party the master considered as having the burden of proof. However, on the charge of failure to account for nursery stock, it appears that appellant was held to have the burden as to all of the issues raised, on the theory that, as trustee for the bankrupt and creditors, he was required to account and to establish the correctness of his account. The evidence showed that, at the inception of the operations under the contract, in addition to the producing grove, there was a large quantity of nursery stock on hand. The account of L. Maxcy, Inc., showed sales of a large portion of this stock and

proper charges for the proceeds were made. It appears from the evidence, and the master found, that the local demand for trees was limited and the trees were difficult to dispose of otherwise than in the local market. There is uncontradicted testimony to the effect that the growth of the stock became injurious to the growth of the trees, and that, since the nursery was a mere adjunct of the grove, it was necessary that this stock be removed. The master held that L. Maxey, Inc., should be charged with the nursery stock, and that, since no account of the trees destroyed had been kept, no credit could be allowed therefor.

A great deal of argument is presented and many cases are cited both for and against the proposition that L. Maxcy, Inc., had the burden of showing that the portion of the nursery stock unaccounted for necessarily had been destroyed. It is rather difficult to draw a parallel between this case and any of the authorities cited. Nevertheless, the general rules of evidence obtain in this case, and those controlling are so well recognized as to require no citations in their support. The burden of proof rests primarily on him who has the affirmative of the issue. A trustee has the burden of establishing the correctness of his account because either the charges in that account are a matter of record, are admitted in the account, or are solely within the knowledge of the trustee; and the trustee is undertaking to satisfy those charges against him by proof of allowable credits in his favor. When it is established that a certain value has come into his possession by virtue of the trust relation, he has the burden of showing that that value is offset by a proper credit in his account. If the thing is of no value, or if reasonably believed to be of no value, and was not dealt with by the trustee, he is not required to account therefor, because he is not properly chargeable therewith.

In the instant case, if the nursery stock was a menace to the grove and there was no market for it, as a problem of management, it stood in the same relationship as the weeds and grass that retard the cover crop. The fact that it existed, and to a limited extent was marketable, does not raise any presumption as to the value of the whole, or, in the absence of proof, that it had been misappropriated. The theory by which a trustee is charged on failure to account is not presumptive wrongdoing, but the result of legal proof of a proper charge

not yet satisfied by an allowable credit. There being no proof that the unaccounted for portion of the nursery stock had any market value at the time of its destruction, or that its destruction constituted waste, the charges made by the master, in the amount of $23,407.60, to cover these items were not supported by the evidence and require the reversal of the decree.

Likewise, the charge of $2,030, as the difference between the market value of the trees sold to the Orange Lake Corporation, a subsidiary of L. Maxcy, Inc., and the price actually received, is without support. The report of the master does not make clear what evidence led to the imposition of this charge, but it appears to have been founded upon the theory that, in dealing with this purchaser, L. Maxcy, Inc., dealt with itself, and that, by virtue of the trustee relationship, the transaction was presumptively fraudulent. Even if this be true in spite of the fact that the dealing was between separate entities, the testimony shows that the transaction was in the utmost good faith and that there was no other market for the trees. The fact that other sales had been had at a higher price does not prove that this stock could have been sold at such price, or that the Orange Lake Corporation would have bought at a higher price had it been demanded. The master found the market limited and the trees hard to sell. In this situation, L. Maxcy, Inc., was confronted with the dilemma of either selling the stock to its subsidiary at a reduced price, it being unwilling to increase its stock at the market price, or to sacrifice the stock for the preservation of the grove. While such transactions should be carefully scrutinized, they were shown, under the facts found and the uncontradicted testimony, to have been in good faith. To sustain the charge is to presume fraud and treat the presumption as irrebuttable.

As to the care and management of the grove, as has been seen above, the testimony was conflicting. The charges of mismanagement are concerning matters about which reasonable men might differ. In weighing the testimony, it must be remembered that no fixed standard was set and that problems of management had to be met by the application of the knowledge and skill available. The master found that the grove was in a run-down condition when taken over. This fact tended to complicate the problem. There was no past history

of successful operation. The question of the proportions of mineral and organic plant food to be applied is always to be determined by the nature and content of the soil. The obligation assumed under the contract was to operate and manage the groves in the most economical manner, taking the best care possible of the same to make them produce the best fruit they were capable of producing, and to do all that could be done to make them a paying investment. While these provisions are somewhat contradictory, it is clear that L. Maxcy, Inc., was not an insurer of the success of the operations, nor of the propriety of the methods followed in the management. The violation of this agreement is asserted as the basis for the charge of $25,000 for "deliberate damage to the grove." By "deliberate," we assume that the master intended willful or intentional damage; but there is a complete lack of evidence of willfulness or intent, except as the master infers from the fact that L. Maxcy, Inc., was desirous of obtaining the title. Such an inference is not supported by the facts.

Moreover, if it be admitted that the grove is in worse condition now than at the time it was taken over, all of the testimony is consistent with appellants' theory that such damages as have occurred through mismanagement were the results of mistakes of the best judgment, fairly exercised, in the light of what was then known and the experience and skill available. Since the charge must rest upon a finding of a breach of contract, the burden of establishing that breach rested upon appellee. Since the most that can be said in support of the finding is that the evidence is equally consistent with compliance and breach, appellee has not met the burden of proof, and the decree must be reversed as to the establishment of this charge.

It is immaterial in this respect whether the claim for damages for breach of the contract is in the right of the creditors or the bankrupt. If the contract be considered as one for the benefit of the creditors, it conferred no greater right upon them than was retained by the bankrupt, and the trustee can assert no greater right than the bankrupt would have had but for adjudication.

The charges of $457.25, denominated as improper charges, do not seem to be questioned by appellants, except on the general question of jurisdiction, and it clearly ap-

pears that L. Maxcy, Inc., was not entitled to credit for the items which make up the aggregate.

Discussion of the other questions raised on this appeal is rendered unnecessary by our holdings on the questions mentioned above.

The decree of the District Court is reversed as to the charges for damage to the grove, all nursery stock unaccounted for, and difference between prices obtained for nursery stock sold to Orange Lake Corporation and market price for similar stock. In all other respects the decree is affirmed, and the case is remanded to the District Court for further proceedings not inconsistent with this opinion; the entire costs of this appeal to be assessed against appellee.

Affirmed in part, and reversed in part.