ABRAHAM SUTAIN and MILDRED SUTAIN, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Sutain v. Commissioner
Docket Nos. 4993-76, 4994-76, 4995-76, 4359-77, 4360-77, 4361-77.
United States Tax Court
T.C. Memo 1979-428; 1979 Tax Ct. Memo LEXIS 98; 39 T.C.M. (CCH) 365; T.C.M. (RIA) 79428; October 15, 1979, Filed Abraham Sutain, pro se. Alan Summers, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined deficiencies and negligence penalties as follows: Addition to Tax
(Petitioners)
Year
Income Tax
Section 6653(a) [2]
Abraham and Mildred
Sutain
1972
$51,334
$2,566.70
A. A. Sutain, Ltd.
1972
57,148
2,857.40
Abraham Sutain,
Transferee
1972
57,148
2,857.40
Abraham and Mildred
1973
72,455
None
Sutain
Abraham Sutain,
Transferee
1973
97,373
4,869.00
Mildred Sutain,
Transferee
1973
97,373
4,869.00
*100 The issues for decision are: 1. Whether there was an illegal search or seizure of petitioner A. A. Sutain, Inc.'s books and records in connection with respondent's audit of petitioners' 1972 and 1973 taxable years. 2. Whether respondent correctly determined for 1972 a deficiency in petitioners Abraham and Mildred Sutain's income tax and an addition to tax under section 6653(a). 3. Whether respondent correctly determined for 1973 a deficiency in petitioners Abraham and Mildred Sutain's income tax. 4. Whether respondent correctly determined for 1972 a deficiency in petitioner A. A. Sutain, Ltd.'s income tax and an addition to tax under section 6653(a). If so, whether petitioner Abraham Sutain is liable as a transferee under section 6901 to the extent of $56,785.50 for this deficiency and addition to the tax. 5. Whether petitioners Abraham and Mildred Sutain are severally liable as transferees of A. A. Sutain, Ltd. for its deficiency of $97,373 and an addition to the tax under section 6653(a) of $4,869 in 1973. FINDINGS OF FACT Some of the facts *101 have been stipulated and are found accordingly. [3]
At the time they filed their petition, petitioners Abraham and Mildred Sutain were residents of California. Petitioner A. A. Sutain, Ltd., also known as A. A. S. Designs, Ltd., was a New York corporation with its principal place of business in New York. When we hereafter refer to Corporation, we will be referring to A. A. Sutain, Ltd. Abraham and Mildred Sutain were husband and wife. They each owned 50 percent of the stock of Corporation. For the years in issue, Corporation prepared its income tax returns using the accrual method of accounting. Corporation was in the business of manufacturing, distributing and selling sunglasses. On February 22, 1973, Corporation entered into an agreement providing for the sale of all its assets to Bujari Ltd. This agreement provided that Corporation would transfer its business, including inventory, fixtures, equipment, goodwill, and exclusive right to its name (except for purposes of credit) to Bujari. Corporation was entitled *102 to receive any money due with respect to goods shipped prior to and including the date of sale. [4] The agreement further provided that Bujari had the right to offset the purchase price by the amount of any judgments, tax liens, or indebtedness of Corporation if Bujari became obligated to pay such debts and Corporation, upon due demand, refused to pay. [5] The agreed price for the sale of Corporation's assets to Bujari was $296,227, of which $70,000 was to be paid in cash and the remainder was to be paid by execution and delivery of 45 promissory notes. The sale of Corporation's assets to Bujari was consummated pursuant to this agreement on February 22, 1973. On the same day that Corporation sold its assets to Bujari, Corporation adopted a plan of dissolution in complete liquidation. On March 20, 1973, Corporation executed Form 966, Corporate Dissolution of Liquidation, and mailed this form to respondent. This form, which was signed by Abraham Sutain *103 as president of Corporation, states that a complete liquidation of Corporation would be accomplished in 1973 under section 337. In Corporation's final tax return, which was filed in March 1974, Abraham Sutain stated that Corporation had been liquidated in 1973 after the sale of its assets to Bujari. The fair market values of Corporation's assets at the time Corporation was liquidated were as follows: Cash
$ 82,637
Promissory Notes
216,227
Accounts Receivable
49,880
Automobile
2,963
Total
351,707
Less: Accounts Payable
13,050
Other Current Liabilities
16,595
Loans from Stockholder
5,707
35,352
Net Amount
$316,355 [6] None of Corporation's liabilities, either existing or contingent, were assumed by any other corporation or individual following the liquidation. Corporation's net assets were distributed to its two shareholders in a liquidating distribution sometime between February 22 and December 31, 1973. The assets of Corporation were divided equally between its shareholders; Abraham and Mildred Sutain each received $158,177.50. On their joint *104 return for 1973, the Sutains reported long-term capital gain from the sale of Corporation in the amount of $110,000. Corporation did not report any gain from the sale of its assets to Bujari. In 1974 respondent began an inquiry into the 1972 and 1973 taxable years of the Sutains and Corporation. On July 19, 1974, Revenue Agent McGuiness had a telephone conversation with Abraham Sutain during which a tentative appointment was arranged between McGuiness and Abraham for September 4, 1974, at the Sutains' residence. During this conversation, Abraham indicated that he intended to engage an accountant to represent him in the audit of his tax returns. Subsequently, Abraham went to the office of Mr. Lieberman, an accountant, and showed Lieberman a letter which he had received from respondent to the effect that an audit would be conducted. Prior to this time, Lieberman had not been associated with the Sutains or Corporation. Lieberman quoted a fee to Abraham for services to be rendered, sent him a bill, and subsequently received a check in payment. Abraham then brought Corporation's books and records to Lieberman and asked Lieberman to represent him at the examination by respondent. *105 However, Lieberman did not obtain a signed power of attorney from Abraham. On September 4, 1974, Lieberman telephoned Revenue Agent McGuiness and cancelled the Revenue Agent's appointment with Abraham. A second conversation between Lieberman and McGuiness was held on September 13, 1974, but an appointment was not set up since Lieberman wished to meet first with Abraham. The actual audit of Corporation's books and records began in April 1975. On April 14, 1975, Lieberman and McGuiness made an appointment for April 18, 1975. On April 18, McGuiness went to Lieberman's office, where Lieberman voluntarily gave McGuiness Corporation's books and records to examine. McGuiness asked Lieberman if he had a power of attorney from Abraham, and Lieberman stated that he did not. Because Lieberman did not have a power of attorney, McGuiness did not discuss any issues, adjustments, or any other matter with him. McGuiness simply reviewed Corporation's books and records which Lieberman gave him; McGuiness did not take any books or records from Lieberman's office. McGuiness never contacted Abraham after their original conversation in July 1974. McGuiness did attempt to locate Abraham *106 several times after that, but was unsuccessful. Despite his inability to contact Abraham, McGuiness never discussed with Lieberman any of the adjustments which McGuiness planned to propose with regard to the Sutains or Corporation; McGuiness did not raise these matters because Lieberman did not have a power of attorney. Respondent determined a deficiency in Corporation's income tax for 1972 of $57,148, plus an addition to the tax for negligence under section 6653(a) of $2,857. This deficiency determination was based on a redetermination of Corporation's income using the bank deposits method, an adjustment to inventory, a disallowance of claimed purchases using letters of credit, plus the disallowance of various claimed deductions. Respondent further determined that Abraham Sutain was liable for this deficiency as the transferee of Corporation's assets. [7] Additionally, with respect to 1972, respondent determined a deficiency in the Sutains' income tax of $51,334, plus an addition to the tax for negligence of $2,566.70. Respondent determined that the Sutains received unreported dividend income from Corporation in the amount of $89,578 in 1972. *107 With respect to 1973, respondent determined that Abraham and Mildred Sutain wre severally liable as transferees of Corporation's assets for a deficiency in Corporation's income tax of $97,373, plus an addition to the tax for negligence under section 6653(a) of $4,869. Additionally, respondent determined a deficiency in the Sutains' income tax for 1973 of $72,455. Respondent determined that the Sutains realized unreported capital gains from the liquidation of Corporation in the amount of $108,254. Respondent further determined that the Sutains received unreported dividend income from Corporation in the amount of $5,470. Respondent also disallowed various claimed deductions for lack of substantiation. At the time of trial, Abraham refused to answer respondent's questions on claim of the Fifth Amendment privilege. He did not, however, then have any reason to believe that a criminal prosecution was pending or probable, nor did he believe that it was. No criminal prosecution was then in fact being considered by the Internal Revenue Service. OPINION The first issue for decision is whether there was an illegal search or seizure of Corporation's books and records in connection *108 with respondent's audit of Corporation's and the Sutains' 1972 and 1973 taxable years. This is the petitioners' central contention in this case; they claim that such an illegal search and seizure occurred and, therefore, all evidence derived therefrom should be stricken from the record in this case. Petitioners further contend that, because of this alleged violation of their rights under the Fourth and Fifth Amendments to the Constitution, the deficiencies determined by respondent should be invalidated. Respondent, on the other hand, contends that its agents lawfully examined the books and records of Corporation. The facts of this case are clear. Abraham Sutain gave Corporation's books and records to his accountant, Mr. Lieberman. Abraham did not give Lieberman a power of attorney, but he did ask Lieberman to represent him in the investigstion by respondent. Lieberman then contacted Revenue Agent McGuiness and eventually Lieberman voluntarily made Corporation's books and records available to McGuiness for examination. McGuiness examined the books and records but did not remove them from Lieberman's custody. Because Lieberman did not have a power of attorney, McGuiness did *109 not discuss any matters with him. Relying, inter alia, on information obtained through this examination, respondent determined the deficiencies at issue in this case. Section 7602 provides: For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized-- (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry; (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give *110 such testimony, under oath, as may be relevant or material to such inquiry; and (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry. Respondent relies on this provision as his authorization to examine the books and records maintained by Corporation, whether those books and records were in the custody of Abraham or his accountant, Lieberman. [8] Respondent contends that the examination of these books and records at Lieberman's office was reasonable under the circumstances. Section 7605(a). [9] Since the books and records were voluntarily produced, respondent did not employ the summons procedure authorized by Section 7602(b). *111 We agree with respondent's interpretation of these statutory provisions. Section 6011 requires every person liable for tax to maintain necessary records. Respondent is authorized by section 7602 to examine these records, whether the records are voluntarily produced (as here) or not. Although respondent's summons power is limited to the extent of the Constitutional prohibition against unreasonable searches and seizures, in this case there was no "search and seizure" since the books and records were voluntarily produced. Cf. Fisher v. United States,425 U.S. 391, 401 (1976). Moreover, petitioner's constitutional arguments have been considered and rejected by the Supreme Court of the United States. In Couch v. United States,409 U.S. 322 (1973), the taxpayer hired an independent accountant to whom she delivered her business records. Respondent sought to obtain these records by a summons. The Supreme Court upheld respondent's argument that he was entitled to obtain the records. Specially, the Court rejected the taxpayer's claim that her Fifth Amendment rights against compulsory self-incrimination were jeopardized. The Court noted that the *112 taxpayer was required to keep these records and that no Fourth or Fifth Amendment claim can prevail when there exists no legitimate expectation of privacy and no semblance of governmental compulsion against the person of the accused. 409 U.S. at 335-36. The taxpayer in Couch had voluntarily given her records to her accountant, and she had no valid constitutional objection to respondent's attempt to obtain those records from the accountant. See Falsone v. United States,205 F. 2d 734, 739 (5th Cir. 1953), cert. denied 346 U.S. 864 (1953); United States v. Ponder,475 F. 2d 37 (5th Cir. 1973). See also United States v. LaSalle National Bank,437 U.S. 298 (1978); Donaldson v. United States,400 U.S. 517 (1971). This case is easier. In this case Sutain voluntarily gave his books and records to his accountant. He made the accountant his agent for purposes of the examination. The agent's authority clearly extended to production of Corporation's books and records. Thus Abraham, through his agent, voluntarily produced the records and could not be heard to object that their compulsory *113 production would be barred by the Constitution even were that the case.Under Couch respondent could have obtained these records by summons if necessary. Here, however, since the accountant voluntarily produced the records for examination, respondent did not issue a summons. It seems clear to us that, absent coercion or intimidation of Abraham's accountant to produce these records, there was no violation of Abraham's constitutional rights. [10]
The next issue is whether respondent correctly determined a deficiency of $51,334 and an addition to tax under section 6653(a) of $2,566.70 in the Sutains' 1972 income tax. Respondent's determination of a deficiency is presumptively correct, and the Sutains bear the burden of proving respondent's determination wrong. Welch v. Helvering,290 U.S. 111 (1933); *114 Rule 142(a), Tax Court Rules of Practice and Procedure. The Sutains also bear the burden of proof with respect to the addition to tax for negligence under section 6653(a). Bixby v. Commissioner,58 T.C. 757, 791 (1972). In this case the Sutains presented no evidence. [11] Accordingly, we hold that the Sutains have failed to carry their burden of proof, and we sustain respondent's determination for 1972 of the deficiency and addition to tax. Similarly, with respect to 1973 respondent determined a deficiency in the Sutains' income tax of $72,455. The Sutains presented no evidence on this issue, and we conclude that they have failed to carry their burden of proof. Accordingly, we sustain respondent's determination. The final issues for decision all concern whether Abraham and Mildred Sutain are liable for deficiencies *115 in income tax and additions to the tax with respect to Corporation. Specifically, respondent determined that with respect to 1973 Abraham and Mildred Sutain are severally liable as transferees for a deficiency of $97,373 and an addition to the tax of $4,869. Respondent also determined that with respect to 1972 Abraham Sutain is liable as transferee for a deficiency of $57,148 and an addition to the tax of $2,857.40. Section 6901(a) enables respondent to collect taxes from a transferee of property who is liable, at law or in equity, for the taxes of his transferor. Respondent has the burden of proving that the Sutains are liable as transferees. Section 6902. The existence and extent of transferee liability are determined by the law of the state in which the transfer occurred--in this case, New York. Commissioner v. Stern,357 U.S. 39, 45 (1958); Estate of Miller v. Commissioner,42 T.C. 593, 598 (1964). In order to impose transferee liability on the Sutains, there must be a tax liability owed by the transeror. With respect to Corporation, respondent determined for 1972 PAGE 17, 18, Missing (2d Cir. 1965); Bartmer Automatic Self Service Laundry, Inc. v. Commissioner,35 T.C. 317, 322 (1960); *116 Hine v. Commissioner,supra at 1558. Respondent also has the burden of establishing the value of the assets transferred. We conclude that respondent has carried his burden of proving each of these points. First, we found that after the sale of its assets to Bujari, Corporation was dissolved and the proceeds of the sale were distributed to its two shareholders, Mildred and Abraham Sutain. The net amount distributed by Corporation to its shareholders was $316,355, which was comprised of cash, promissory notes, accounts receivable, and an automobile, less some liabilities. These facts establish both the transfer of Corporation's assets and the value of such assets transferred Nonetheless, the Sutains dispute that they were the recipients of Corporation's assets. The Sutains contend that the assets of Corporation were all sold to Bujari and, therefore, Bujari is liable for any tax deficiencies. They also contend that Bujari expressly assumed the tax liabilities involved in this case. However, the facts do not bear out the Sutains' contentions. Specifically, the contract of sale between Corporation and Bujari does not include an assumption of this tax liability; *117 in fact, Corporation warranted to Bujari that there was no such liability outstanding. The sales agreement merely provided that the purchase price could be reduced if Bujari were required to pay any of Corporation's liabilities and was not reimbursed for such costs.These contractual terms do not constitute an assumption of Corporation's outstanding tax liabilities. Moreover, a corporation cannot divest itself or its shareholders of liability for taxes by a contract (providing for the payment of these taxes by another) to which the United States is not a party. Hine v. Commissioner,54 T.C. 1552, 1559 (1970). As to whether the Sutains received Corporation's assets, although Corporation's fixtures, machinery, etc. were sold to Bujari, the proceeds of this sale--cash and promissory notes--were distributed to the Sutains upon liquidation. Second, there is no doubt that the Sutains did not pay adequate consideration for the assets which they received from Corporation. The Sutains did not transfer any money or property (other than their stock in Corporation) to Corporation in return for the assets distributed to them. See N.Y. Debt. & Cred. Law sec. 272 *118 (McKinney 1945). Rather, Corporation was simply liquidated and its assets distributed to its two shareholders. Third, we conclude that Corporation was rendered insolvent by the distribution of its assets to the Sutains. At the time of this transfer, Corporation had outstanding tax liabilities for both 1972 and 1973. [14] Under New York law, if a conveyance is made for inadequate consideration and the transferor is indebted, the transfer is presumptively fraudulent and the burden is cast upon the transferee to establish that the transferor was solvent at the time of the transfer. Papineau v. Commission,28 T.C. 54 (1957); Cohen v. Benjamin,246 App. Div. 866, 284 N.Y. Supp. 884 (1936). Here, the Sutains have presented no evidence that Corporation was solvent; in fact, the evidence all indicates that Corporation was insolvent since it had tax liabilities after the distribution in liquidation. See N.Y. Debt. & Cred. Law sec. 271 (McKinney 1945). *119 We conclude that respondent has established that the Sutains are liable as transferees under New York law. However, in order to hold petitioners liable for Corporation's tax obligations, respondent must also establish that the transfer was made during or after the period in which respondent's claim arose and that respondent was under no duty to proceed first against the transferor. Yagoda v. Commissioner,39 T.C. 170 (1962), affd. 331 F. 2d 485 (2d Cir. 1964), cert. denied 379 U.S. 842 (1964); Hine v. Commissioner,supra at 1558. The evidence fully supports respondent on each of these questions. First, Corporation's tax liability arose in 1972 and 1973, and the transfer was made in 1973. Clearly the transfer was made during or after the period with respect to which respondent's tax claim arose.Second, since all of Corporation's assets were distributed to the Sutains in the complete liquidation of the Corporation, it would have been futile for respondent to proceed against Corporation for these tax liabilities. Estate of Miller v. Commissioner,42 T.C. 593, 599-600 (1964). Accordingly, we conclude *120 that respondent has established all of the facts which he must prove in order to hold the Sutains liable as transferees under section 6901. It is a well-established principle that, if the assets of a corporation are distributed among the stockholders before all debts and other obligations entitled to priority are first paid or provided for, each stockholder is severally liable to te creditors to the extent of the amount received by him. Hamar v. Commissioner,42 T.C. 867, 875 (1964). With respect to 1973, respondent determined that Mildred and Abraham Sutain were severally liable for the deficiency in Corporation's income tax of $97,373, plus an addition to the tax for negligence under section 6653(a) of $4,869. Mildred and Abraham Sutain, as equal shareholders of Corporation, each received 50 percent of its assets, or $158,177.50, upon liquidation of Corporation. Since the amounts received exceeded the transferee liability which respondent determined, we uphold respondent's determinations for 1973. With respect to 1972, respondent determined that Abraham Sutain was liable as transferee for the deficiency in Corporation's income tax of $57,148, plus *121 an addition to the tax for negligence under section 6653(a) of $2,857.40. Respondent relies on the same evidence which established Sutain's liability for 1973 as a transferee of Corporation, and we conclude that respondent's reliance is justified. Abraham Sutain is liable as a transferee of Corporation for both its 1972 and 1973 tax deficiencies. However, when Abraham's liability for 1973 is subtracted from the total assets he received from Corporation upon liquidation, he received only $55,935.50 from Corporation which could be used to satisfy this liability for 1972 ($158,177.50 - $102,242 = $55,935.50). On brief respondent concedes that Abraham's total liability as a transferee cannot exceed the fair market value of the assets which he received through the liquidation of Corporation plus interest as provided by law. Accordingly, we hold that Abraham Sutain is liable as a transferee in 1972 in the amount of $55,935.50. Decisions will be entered for the respondent in Docket Nos. 4993-76, 4994-76, 4359-77, 4360-77, and 4361-77.
Decision will be entered under Rule 155 in Docket No. 4995-76.
Footnotes
1. Cases of the following petitioners have been consolidated herewith for purposes of trial, briefing and opinion: A. A. Sutain, Ltd., docket no. 4994-76; Abraham Sutain, Transferee, docket no. 4995-76; Abraham and Mildred Sutain, docket no. 4359-77; Abraham Sutain, Transferee, docket no. 4360-77; and Mildred Sutain, Transferee, docket no. 4361-77.↩
2. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
3. By order of the Court dated October 12, 1978, portions of respondent's proposed stipulation of facts were deemed stipulated for purposes of these cases.↩
4. As of February 22, 1973, payment had not been received on credit sales totaling approximately $47,000. ↩
5. Corporation represented to Bujari that it had no creditors or disputed claims outstanding as of the time of the sale.↩
6. The stipulated "net amount" of $318,055 results from an apparent error in subtraction.↩
7. Respondent has subsequently conceded that Abraham Sutain's liability as transferee is limited to $56,785.50. In fact it is limited to $55,935.50 ($158,177.50 less $102,242).↩
8. This case does not involve multiple inspections of a taxpayer's books and records. See section 7605(b). ↩
9. Section 7605(a) provides: (a) Time and Place. -- The time and place of examination pursuant to the provisions of section * * * 7602 shall be such time and place as may be fixed by the Secretary or his delegate and as are reasonable under the circumstances. In the case of a summons under authority of paragraph (2) of section 7602, * * * the date fixed for appearance before the Secretary or his delegate shall not be less than 10 days from the date of the summons.↩
10. Petitioners contend on brief that their accountant, Lieberman, either was threatened by respondent's agent or was in collusion with him. There is no factual support whatsoever for these allegations. The accountant testified forthrightly and credibly as to the events which occurred; his testimony and the testimony of Revenue Agent McGuiness completely refute petitioners' argument.↩
11. At trial, Abraham Sutain refused to present any evidence; instead, he relied on his alleged Fifth Amendment rights. The Court repeatedly informed him that the Fifth Amendment↩ was inapplicable in this civil proceeding and that he had to present evidence in order to meet his burden of proof. His failure to do so can only be laid to obstinacy.
14. These tax liabilities establish respondent as a "creditor" of Corporation within the meaning of New York law. N.Y. Debt. & Cred. Law sec. 270↩ (McKinney 1945).