NICHOLAS CASTORINA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Castorina v. Commissioner
Docket No. 3226-83.
United States Tax Court
T.C. Memo 1986-540; 1986 Tax Ct. Memo LEXIS 67; 52 T.C.M. (CCH) 988; T.C.M. (RIA) 86540; November 10, 1986. Nicholas Castorina, pro se. David M. Brandes, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: On November 15, 1982, respondent issued a statutory notice of deficiency in which he determined petitioner's liability as a transferee for the following deficiencies and additions to tax due from Nick Castorina Estates, Inc.: Additions to Tax
Year
Deficiency
Sec. 6651(a)(1) [1]
Sec. 6653(a)
1978
$2,222
$556
$111
1979
14,370
3,593
719
After a concession, [2] the issues remaining for decision are: (1) whether respondent's determination as to the deficiency and additions to tax for taxable year 1979 is correct; (2) whether petitioner is liable as a transferee for the unpaid 1979 income tax deficiency and additions to tax due from Nick Castorina Estates, Inc.; and (3) whether the *69 assessment and collection of the deficiency from petitioner as transferee is barred by the statute of limitations. FINDINGS OF FACT At the time he filed his petition, Nicholas Castorina resided in Miami, Florida. [3] During the taxable year in issue, petitioner was the sole shareholder of Nick Castorina Estates, Inc. (hereinafter referred to as "Estates" or "the corporation"), a Florida corporation organized on January 5, 1978. Estates maintained a bank account at Flagship National Bank of Miami and made regular deposits and withdrawals from this account. Until April 1979, Estates owned a parcel of unimproved real property in Miami, Florida, which it subsequently sold for $68,000. Estates owned no other assets. *70 During the course of 1979, petitioner transferred corporate assets from the corporation's bank account to himself or for his own benefit. All checks drawn on this account were signed by petitioner. The aggregate amount of such transfers was $63,015.84 and of that amount, approximately $33,000 was transferred directly to petitioner. [4] These transfers made by petitioner from Estates' bank account were not supported by any consideration and none of the amounts transferred were ever returned to the corporation. As of December 31, 1979, Estates' bank account, the remaining asset of the corporation, had a balance of $67.35. Subsequently, Estates was audited by the Internal Revenue Service. Because the corporation maintained no books or records, *71 respondent determined the corporation's income tax liability by analyzing its bank deposits and real estate transactions. Respondent filed substitute returns for Estates for the taxable years 1978 and 1979. Estates paid no part of the income taxes or additions to tax for those years. Estates filed its last annual report with the State of Florida in 1982. On June 15, 1984, Estates was involuntarily dissolved by the State of Florida for failure to file its annual report. OPINION The first issue for our consideration is whether the deficiency and the additions to tax determined by respondent for taxable year 1979 are incorrect. Petitioner bears the burden of proof as to that issue. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Although petitioner alleged in his petition that the corporation was not liable for taxes, petitioner put forth no evidence that would rebut the presumption of correctness as to respondent's determination. Accordingly, we sustain the income tax deficiency and additions to tax determined against Nick Castorina Estates, Inc., for the taxable year 1979. Next, we must consider whether petitioner is liable under section 6901(a) *72 as a transferee. Section 6901(a)(1)(A) provides a procedure by which respondent can collect from a transferee the unpaid tax liability of the transferor. Phillips v. Commissioner,283 U.S. 589 (1931).This provision, however, does not create any separate liability; it merely provides a secondary method for enforcing the existing liability of a transferor. Mysse v. Commissioner,57 T.C. 680, 700-701 (1972); C.B.C. Super Markets, Inc. v. Commissioner,54 T.C. 882, 897-898 (1970). Respondent has the burden of proving all of the elements necessary to establish petitioner's liability as a transferee. Sec. 6902(a); Rule 142(d). If such burden is carried, the transferee is liable for the transferor's taxes due, and for any additions to tax, to the extent of assets received from the transferor. Papineau v. Commissioner,28 T.C. 54, 58 (1957). See Leach v. Commissioner,21 T.C. 70, 76 (1953). While the statute affords respondent a procedural remedy, the existence and extent of transferee liability are governed by state law. Commissioner v. Stern,357 U.S. 39, 45 (1958); Scott v. Commissioner,70 T.C. 71, 79 (1978); *73 Estate of Miller v. Commissioner,42 T.C. 593, 598 (1964). Respondent therefore must prove that petitioner was liable as a transferee under state law. Under Florida law a conveyance is fraudulent if it was made without adequate consideration and with the intent to delay, hinder or defraud creditors. Fla. Stat. Ann. sec. 726.01 (West 1969). Such conveyances may be set aside by creditors. See, e.g., Florida Fruit Canners, Inc. v. Walker,90 F.2d 753, 757 (5th Cir. 1937). To constitute a fraudulent conveyance under this section "there must be a creditor to be defrauded, a debtor intending fraud, and a conveyance of property which is applicable by law to the payment of the debt due." Bayview Estates Corp. v. Southerland,114 Fla. 635, 154 So. 894, 900 (1934). However, intent need not be actual. Stelle v. Dennis,104 Fla. 384, 140 So. 194 (1932); McKeown v. Allen,37 Fla. 490, 20 So. 556 (1896). See also United States v. Ressler,433 F.Supp. 459, 464 (S.D. Fla. 1977), affd. 576 F.2d 650 (5th Cir. 1978), cert. denied 440 U.S. 929 (1979). Intent may be evidenced *74 by a number of "badges of fraud" recognized by Florida law. These include: (1) lack of consideration for the transfer, Gyorok v. Davis,183 So. 2d 701, 703 (Fla. App. 1966); (2) close relationship between the transferor and transferee, Fisher v. Grady,131 Fla. 1, 14, 178 So. 852, 858 (1937); Money v. Powell, 139 So. 2d 702, 704 (Fla. App. 1962); (3) retention or possession of the property after the transfer, Jones v. Ware,111 Fla. 69, 149 So. 345 (1933); and (4) insolvency or substantial indebtedness of the transferor, Banner Construction Corp. v. Arnold,128 So. 2d 893, 896 (Fla. App. 1961). Furthermore, under Florida law it is not necessary to show that the debtor was actually insolvent at the time of the conveyance; it is enough to show that he had substantial indebtedness. Banner Construction Corp. v. Arnold,supra.See also United States v. Fernon,640 F.2d 609, 615 (5th Cir. 1981). Accordingly, in order for respondent to carry his burden of proof, he must show (1) that petitioner received assets of the transferor; (2) that the transfer was not made for *75 adequate consideration; (3) that the transferor was insolvent at the time of the transfer or was rendered insolvent by such transfer, or that the transfer was in fraud of creditors; and (4) that respondent has exhausted all reasonable collection efforts against the transferor or that proceeding against the transferor would be a useless gesture. Kreps v. Commissioner,42 T.C. 660, 669 (1964), affd. 351 F.2d 1 (2d Cir. 1965); Bartmer Automatic Self Service Laundry, Inc. V. Commissioner,35 T.C. 317 (1960). Respondent has put forth evidence to prove each of these points. First, the record shows that petitioner, the sole shareholder of Estates, was the recipient of or the beneficiary of virtually all the assets of that corporation. Approximately half of the transfers or $33,000 were made by check from the corporation directly to petitioner. The total amount of such transfers was $63,015.84 which, in fact, is in excess of the amount of the taxes and additions to tax owed by the transferor. Uncontroverted evidence submitted by respondent establishes both the fact of the transfer of assets to petitioner and the value of assets transferred.
*76 Second, it is clear that petitioner did not pay adequate consideration for the benefits conferred upon him by the corporation. The Internal Revenue agent who examined the transferor's bank statements testified that she did not discover any payments by petitioner to the corporation. As we found the agent to be entirely credible, and petitioner failed to put forth any evidence of repayment to the corporation, we find that the transfers were not made for adequate consideration. Third, the transferor corporation was rendered insolvent by distribution of its assets to petitioner. Testimony of the examining agent indicates that, after all the transfers were made in favor of petitioner, the only amount remaining in the transferor's account was approximately $67. Such amount is inconsequential in relation to the amount of taxes and additions due. Inasmuch as Estates was only a shell corporation by the end of 1979, the taxes and additions due were clearly noncollectible from the transferor. Furthermore, even if we were to find that the transferor was not rendered insolvent, the transfers resulted in a fraud on the creditors. The Internal Revenue Service was a creditor of the transferor *77 at the time of the transfers. This creditor position is enjoyed by respondent even though the transferor's tax liability has not yet been determined. Papineau v. Commissioner,supra, and Leach v. Commissioner,supra.See also Quirk v. Commissioner,15 T.C. 709 (1950), affd. 196 F.2d 1022 (5th Cir. 1952). Moreover, under Florida law voluntary conveyances between related parties without consideration are presumptively in fraud of creditors. Gyorok v. Davis,supra at 703; McKeown v. Allen,supra.As petitioner here has not put forth evidence to show that the conveyance was not fraudulent, we conclude that the transfers were made with the intent to hinder, delay or defraud respondent from collecting the deficiency and additions to tax for which the transferor was liable. We therefore conclude that respondent has established petitioner's liability under Florida law. As the amount of assets transferred to, or for the benefit of, petitioner exceeds the amount of the taxes and additions thereto due from Nick Castorina Estates, Inc., petitioner is liable under section 6901(a) *78 for the full corporate liability. Finally, petitioner alleges in his petition that the statute of limitations bars the assessment and collection of taxes involved herein. We find his arguments to be without merit for several reasons. First, Estates, the transferor in this case, failed to file an income tax return for 1979. Section 6501(c)(3) provides that where no return is filed "the tax may be assessed, or a proceeding in court for the collection of such tax may begun without assessment, at any time." Even though substitute returns were filed by the revenue agent who audited Estates, the statute for assessment and collection did not start to run. Sec. 6501(b)(3); sec. 301.6501(b)-1(c), Proced. & Admin. Regs. In addition, section 6901(c) provides that the period of limitations for assessment of an initial transferee shall be within one year after the expiration for assessment against the transferor. Here, the statutory notice of deficiency was issued on November 15, 1982, well in advance of the section 6901 requirements and within three years of the due date of Estates' 1979 return. Sec. 6072(b). Thus, even if Estates had filed a timely tax return, the notice of deficiency *79 was timely. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Respondent conceded at trial that petitioner is not liable as a transferee of Nick Castorina Estates, Inc., for the taxable year 1978.↩
3. Petitioner did not appear at trial either in person or through counsel nor has he filed a brief or otherwise taken notice of the hearing. His present whereabouts are unknown.↩
4. For example, one check payable to Flagship National Bank in the amount of $18,000 bears the notation "personal." Another check, for $15,000, names Nicholas Castorina as payee. Numerous other checks are to "cash" and American Express. In his reply to respondent's answer, petitioner admits that approximately one-third of the payments made to payees American Express, Mr. Arthur Luban, and Mr. Arthur Leiban were for his personal benefit.↩